No. 96-153

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

MISCHELLE SCHELSKE and RICK SCHELSKE,

    Plaintiffs and Appellants,

v.

CREATIVE NAIL DESIGN, INC., a foreign corporation;
OPI PRODUCTS, INC., a foreign corporation; CLAIROL, INC.,
a foreign corporation, HELENE CURTIS, INC., a foreign
corporation; NEXXUS PRODUCTS COMPANY, a foreign corporation;
THE ADU COMPANY, a foreign corporation; REVLON PROFESSIONAL
PRODUCTS, INC., a foreign corporation; COSMETIC ARTS,
a foreign corporation; AMERICAN INTERNATIONAL, a foreign
corporation; SEBASTIAN INTERNATIONAL, a foreign corporation;
UNIT CHEMICAL CORPORATION, a foreign corporation; PAUL MITCHELL
(BOCCHI LABORATORIES); MATRIX ESSENTIALS, INC., a foreign
corporation; MALIBU 2000, a foreign corporation; HIGHLAND
CORPORATION, a foreign corporation; CAPITAL HILL MALL PARTNERSHIP,
a Utah limited partnership; JC PENNEY COMPANY, INC., a foreign
corporation; PALMER DUNCAN CONSTRUCTION COMPANY, a Montana
corporation; and DOES and ROES ONE THROUGH TEN,

    Defendants and Respondents.

APPEAL FROM:    District Court of the First Judicial District,
                In and for the County of Lewis and Clark,
                The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        John C. Doubek; Small, Hatch, Doubek
        & Pyfer; Helena, Montana

    For Respondents:

        Randy J. Cox; Boone, Karlberg & Haddon;
        Missoula, Montana

        Susan P. Roy; Garlington, Lohn & Robinson;
        Missoula, Montana

        Ronald F. Waterman; Gough, Shanahan,
        Johnson & Waterman; Helena, Montana

Submitted on Briefs:  October 10, 1996
              Decided: January 2, 1997

Filed:

_____
            Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

Mischelle and Rick Schelske appeal from the amended order granting summary judgment in favor of the defendant manufacturers as entered by the First Judicial District Court, Lewis and Clark County. We affirm.

The issue on appeal is as follows:

Did the District Court properly grant summary judgment in favor of the defendants?

A. Did the District Court correctly conclude that the Schelskes failed to comply with the Case Management Order?

B. Did the District Court err in determining that the Schelskes cannot exclusively rely upon Material Safety Data Sheets to establish a prima facie claim of product liability?

C. Did the District Court err in not accepting the Schelskes' legal assertion that once the plaintiffs produce evidence of multiple product "indivisible injury" the causation element of the claimants' burden of proof is satisfied and the burden shifts to the manufacturer to prove that their product did not cause injury?

## FACTS

Mischelle Schelske worked as a beautician at the JC Penney store in Helena from September 4, 1984, until October 1992, when she left her management position at the salon. On May 11, 1994, Mischelle and her husband Rick filed suit against fourteen cosmetic manufacturing and marketing companies, two construction companies,

2

and the owner of the beauty salon space. The complaint alleges her work exposed her to different substances which allegedly were toxic and that, as a result, commencing in the summer of 1992, she began to experience a variety of pains, swelling, and digestive disorders. She states in her complaint that by December 1992, she was totally unable to continue her work at the salon because of her severe symptoms and debilitating injuries and that she has since been unable to hold gainful employment and has sustained permanent injuries. The Schelskes assert that each cosmetic manufacturer designed, manufactured, and sold products which were defective and that each product directly and proximately damaged them.

On September 28, 1994, the District Court conducted a preliminary pretrial hearing. Pursuant to Rule 16, M.R.Civ.P., the District Court issued a Case Management Order (CMO). The CMO, dated October 11, 1994, was designed to help focus the extensive discovery and to aid in the handling of the complex, multi-party litigation. The Schelskes and the defendants agreed to the issuance of this order. The CMO granted the Schelskes sixty days to serve discovery requests on the defendants, but limited this to obtaining information regarding the contents of the products used by Mischelle, or those which she claims to have been exposed to in the salon. All other discovery was stayed pending compliance with the CMO.

The CMO then provided that within ninety days from the entry of the order, the Schelskes were required to provide a list of

3

products, the circumstances of the alleged exposure, an identification of each specific chemical which allegedly caused harm, and a physician's opinion of a causal connection between exposure and injury. The CMO required that the affidavit from the physician stating his or her opinion must: (1) list all injuries, illness, or conditions suffered by Mischelle; (2) specify the chemical(s) that caused each illness, injury or condition; and (3) state the scientific bases for the physician's opinion. Specifically the court stated in its order that,

> It will not be sufficient for the affidavit to state a "laundry list" of injuries and chemicals. Each injury, illness or condition must be itemized and specifically linked to the chemical or chemicals believed to have caused that particular injury, condition or illness.

On January 9, 1995, the Schelskes filed the affidavit of Jack Thrasher, a toxicologist from New Mexico. On January 30, 1995, the cosmetic manufacturers moved to strike Thrasher's affidavit alleging that it failed to comply with the CMO. On the same date the Schelskes filed a notice of filing discovery requests to all defendants. This discovery was not conducted within the sixty days as provided in the CMO, thus the manufacturers resisted the discovery and moved for a protective order.

A consolidated hearing for all pending motions was set for May 25, 1995. On April 13, 1995, prior to the hearing but after the ninety days provided for in the CMO, the Schelskes filed the affidavit of Curt G. Kurtz, M.D., and then on April 28, 1995, they also filed the affidavit of Gunnar Heuser, M.D. The defendants

4

moved to strike both affidavits, alleging that neither came close to complying with the CMO. At the hearing, the District Court determined that the affidavits did not meet the requirements of the CMO because they did not list which chemicals produced which symptoms and stated that if the court were to accept them it would have the effect of reversing the burden of proof. The motions to strike were taken under advisement and the motion for protective order was granted as to the Schelskes' untimely discovery requests. The court gave the Schelskes three additional months to comply with the CMO.

On August 18, 1995, the Schelskes filed a second affidavit by Dr. Heuser which included approximately 100 Material Safety Data Sheets (MSDS). Manufacturers are required by federal law to obtain or develop MSDS for each chemical they produce which potentially can cause a health hazard in order to provide information to employees about the hazards of the chemicals being produced. On October 23, 1995, after consideration of Dr. Heuser's statement, the court determined that it did not comply with the CMO as an affidavit from a physician listing all of Mischelle's injuries, illnesses, and conditions caused by the exposures, specifying the chemicals which caused each injury, and medically substantiating the physician's opinion as to these matters. The court concluded that the Schelskes had not complied with the CMO within the three-month extension period previously granted.

5

The cosmetic manufacturers therefore moved to strike Dr. Heuser's affidavit and moved for summary judgment asserting that the failure to comply with the CMO and the fundamental failure to offer any proof of a defective product was fatal to the Schelskes' case. A hearing was set for January 18, 1996. On January 16, 1996, the Schelskes filed a third affidavit by Dr. Heuser. In its decision and order the court stated that upon reviewing all of Dr. Heuser's affidavits it concluded that they did not satisfy the requirements of the CMO and therefore granted the defendants' motion to strike. The District Court also granted the defendants' motion for summary judgment. The District Court stated that the Schelskes had not even remotely complied with the provisions of the Case Management Order and as a result there was a failure to allege a prima facie products liability cause of action as set forth in § 27-1-719(2), MCA. The Schelskes appeal this decision and order.

ISSUE

Did the District Court properly grant summary judgment in favor of the defendants?

We review appeals from summary judgment rulings de novo. Motarie v. Northern Montana Joint Refuse Disposal Dist. (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785. When reviewing a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903.

Summary judgment is proper only when no genuine issue of material fact exists and when the moving party is entitled to judgment as a matter of law. Brown v. Demaree (1995), 272 Mont. 479, 901 P.2d 567. This Court looks to the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits to determine the existence or nonexistence of a genuine issue of material fact. Ulrigg v. Jones (1995), 274 Mont. 215, 907 P.2d 937.

A. Did the District Court correctly conclude that the Schelskes failed to comply with the Case Management Order?

The District Court's issuance of the CMO was wholly within its discretion as a management tool contemplated by Rule 16, M.R.Civ.P. This order was patterned after a case management order issued by the United States District Court, District of Montana, in Eggar, et al. v. Burlington Northern R.R. Co. (D. Mont. 1991), 1991 WL 315487, aff'd Claar v. Burlington Northern R.R. Co. (9th Cir. 1994), 29 F.3d 499. The CMO in the present case required the Schelskes to establish the prima facie elements of their products liability claim. Failure to comply with the order would therefore result in a failure to establish that any genuine issues of material fact existed as to the products liability claim, making the case proper for summary judgment. This Court will therefore review the record de novo to determine whether any genuine issues of material fact exist as to the elements of the Schelskes' products liability claim as required by the CMO.

Section 27-1-719(2), MCA, codified the product liability common law in Montana. This section provides:

7

A person who sells a product in a defective condition unreasonably dangerous to a user or consumer or to the property of a user or consumer is liable for physical harm caused by the product to the ultimate user or consumer or to his property if:
(a) the seller is engaged in the business of selling such a product; and
(b) the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

This Court has previously held that in a products liability action the plaintiff must show: (1) the plaintiff was injured by the product; (2) the injury occurred because the product was defective and unreasonably dangerous; and (3) the defect existed when it left the hands of the defendant. Brothers v. General Motors Corp. (1983), 202 Mont. 477, 480, 658 P.2d 1108, 1109; Brown v. North American Mfg. Co. (1977), 176 Mont. 98, 105, 576 P.2d 711, 716.

In sum, the Schelskes were required by the CMO to establish the following facts in order to proceed with a prima facie claim of products liability: (1) product identification; (2) use and exposure; and (3) causation linking product defect to an identifiable injury.

The first element required by the CMO was a statement specifically identifying each product by manufacturer that Mischelle claims to have caused her harm. The affidavits submitted by the Schelskes listed numerous products that may have "potential adverse health effects." However these affidavits, many of which include over 150 pages of MSDS, do not sufficiently identify the specific products Mischelle claims to have been exposed to in her work at the salon.

8

The Thrasher affidavit filed on January 9, 1995, includes a list of 153 products under the heading of "Products With Potential Human Adverse Health Effects." Although Thrasher's affidavit did not state that all 153 products listed were actually claimed by Mischelle to have caused her harm, this could possibly be inferred from the affidavit. Thrasher states that he had been requested "by Plaintiffs' counsel to address a number of products which plaintiff Mischelle Schelske has indicated she has used or come into contact with during the course of her working in the beauty salon." Regardless of whether Thrasher's affidavit only addresses products Mischelle allegedly claims to have come into contact with, many of the products were listed in generic terms such as "shampoos" or "bleach powders." Without specific product names, which would have provided the defendants with the necessary information to allow them to defend against the Schelskes' claim, the affidavit fails to meet the requirements of the CMO.

Dr. Heuser's first affidavit does not provide any additional information as to specific product names that Mischelle alleges to have caused her harm. Heuser's second affidavit, filed August 18, 1995, states that he has considered the list of products which Mischelle claims to have been exposed to; however, this list was not provided. The third affidavit of Dr. Heuser, submitted two days prior to the hearing on the motion for summary judgment, comes closest to complying with the CMO, but again does not provide a complete list of each product Mischelle alleges to have harmed her.

9

The affidavits submitted, therefore, do not substantially comply with the CMO because of their failure to state each specific product that Mischelle Schelske personally identified as having caused her harm.

The second element required by the CMO to form the basis of a prima facie products liability claim required Mischelle to specifically describe the circumstances of the alleged exposure to each of the products identified in the list required, including the time period during which she alleged exposure and the activities which resulted in the exposure. Mischelle worked at the JC Penney salon for a period of eight years. The record is devoid of any specific statement indicating the time period that each product was used by Mischelle, or the period when she came into contact with each product. In addition, the record only provides a general statement by the Schelskes that Mischelle used "each and every product on a daily basis," and that she used the products in a manner consistent with the nature of the product. Over a period of eight years, it is reasonable to assume that some products were used for the entire period and others were used for only a limited length of time. Some products may have been used several times daily and others only on a weekly basis. It is also reasonable to assume that some products were not even available at the salon for the entire eight-year period of alleged exposure. In fact, the Schelskes admit that "[t]here may well have been some products which came on the market during the time Mischelle Schelske was

10

employed but for the most part these products were in use the entire time she was employed." The Schelskes clearly did not comply with the CMO by providing a statement specifically describing the circumstances of the exposure to each of the products identified as having caused harm and the time period during which each of these products were used.

The third and decisive element which the Schelskes failed to meet, as required by the CMO, is a physician's affidavit identifying specific injuries, specific chemicals which caused the injuries, and the scientific or medical basis for a causal connection between chemical exposure and injury. The Thrasher affidavit does not satisfy the initial threshold requirement, as Thrasher is not a physician. The affidavit of Dr. Kurtz only states Kurtz's acceptance of the statements made by Thrasher in his affidavit. It then proceeds to "laundry list" symptoms which Mischelle suffers, and states that she suffers from reactive airway disease and other conditions which have not yet surfaced or been diagnosed. This affidavit is clearly insufficient. The lengthy affidavits submitted by Dr. Heuser, however, require closer scrutiny.

Heuser's first affidavit does not enumerate any specific injuries or illnesses, or state any specific chemicals alleged to have caused Mischelle harm. Heuser's second affidavit also fails to meet the requirements of the CMO. In this affidavit, Dr. Heuser

11

states that chemicals in the defendants' products are "associated with" certain listed diseases. Dr. Heuser contends that:

> Chemicals in defendants' products <u>associated with</u> lung disease, including irritation of mucous membranes, storage disease, asthma, reactive airway dysfunction syndrome, sensitization, atelectasis, bronchiectasis, interstitial pulmonary fibrosis and lung cancer. Mischelle Schelske has exhibited symptoms <u>compatible and suggestive</u> of all the foregoing, with the exception that lung cancer has not yet been diagnosed. The list of diseases and injuries below <u>are a part</u> of what Ms. Schelske suffers from in my medical opinion.

(Emphasis added.) Dr. Heuser's statement only asserts an association between the chemicals in the defendants' products and the diseases of which Mischelle has exhibited symptoms. He does not claim that Mischelle actually suffers from those diseases or injuries, but rather that she has exhibited symptoms which are compatible and suggestive of those problems. The list that Dr. Heuser provides is a compilation of the data from the MSDS and is merely a collection of potential consequences from contact with the chemicals in the products and does not describe the particular injuries suffered by Mischelle. Furthermore, Dr. Heuser clearly asserts that the list of diseases and injuries provided is not an exhaustive list and is only a part of what Mischelle suffers from. The CMO specifically required that the physician's affidavit list "all" injuries, illnesses, or conditions suffered by Mischelle. The affidavit is also deficient in that it does not identify each chemical that caused each injury but lists generic terms such as "hair sprays" and "solvents."

12

The third affidavit filed two days prior to the hearing on the motion for summary judgment speaks to some of the deficiencies of his second affidavit as noted by the court. Dr. Heuser complains in his affidavit, as did counsel for the Schelskes in a previous affidavit, that he is unable to identify certain undisclosed chemicals in some of the products such as "hair sprays." Although the Schelskes were limited in their discovery at this time due to concerns regarding trade secrets, they still failed to identify the known disclosed chemicals and connect them to particular injuries or illnesses. In his third affidavit, Heuser again states that the products are "associated" with certain diseases and that Mischelle exhibits symptoms "compatible with" certain illnesses. These affidavits clearly do not comply with the CMO. The allegations made within the affidavits are vague and conclusory without providing the specific causation linking the product defect to an identifiable injury. This Court has consistently held that speculative and conclusory statements are not a sufficient basis on which to raise a genuine issue of material fact. Ulrigg, 907 P.2d at 941; Miller v. Herbert (1995), 272 Mont. 132, 137-38, 900 P.2d 273, 276.

The requirements of the CMO were explicitly detailed to the Schelskes in both the written order and orally during the pretrial proceedings. The Schelskes did not serve their discovery within the sixty days provided by the CMO. They did not provide the information required by the CMO within ninety days from entry of

13

the order.  On May 25, 1995, the court determined that the CMO had not been complied with and specifically informed the Schelskes again what was necessary for compliance.  The court granted the Schelskes an additional three months from May 25, 1995, to comply with the order.  On January 16, 1996, the Schelskes made a last attempt to comply with the order, which was well beyond the additional three months granted by the District Court, and additionally, did not fulfill the requirements of the CMO.  We therefore determine that the District Court was correct in concluding that the Schelskes did not comply with the Case Management Order.

B.    Did the District Court err in determining that the Schelskes cannot exclusively rely upon Material Safety Data Sheets to establish a prima facie claim of product liability?

The Schelskes largely premise their assertion that they established a prima facie claim of products liability on the Material Safety Data Sheets submitted with the affidavits.  They argue that the existence of these MSDS demonstrate that the manufacturers' products are toxic or hazardous.  The Schelskes, in fact, seemingly urge this court to adopt a standard imposing absolute liability on any manufacturer who complies with federal law by publishing MSDS.

The publication of MSDS is pursuant to federal law and is intended to provide information to employees about the hazards of the chemicals being produced.  See 29 C.F.R. § 1910.1200.  The chemical manufacturers must obtain or develop MSDS for each

14

hazardous chemical they produce or import. A hazardous chemical is defined as one which can produce a physical hazard or health hazard. 29 C.F.R. § 1910.1200. The description of the potential toxicity of the chemical in the MSDS is based on a pure, undiluted sample of the chemical and not on the product itself.

The MSDS therefore provide no direct information regarding the possible toxicity of the products themselves and, furthermore, the MSDS do not establish that any particular product is in a defective condition and is unreasonably dangerous. See Thorton v. E.I. Du Pont De Nemours and Co., Inc. (11th Cir. 1994), 22 F.3d 284, 288-89. In addition, the MSDS provided with the affidavits do not link a particular product with the chemical as one ingredient, to a specific injury, illness, or condition that Mischelle suffers from. This Court declines to adopt a standard imposing absolute liability on manufacturers solely on the basis that they have placed products into the stream of commerce for which MSDS have been provided pursuant to federal law. We conclude therefore that the District Court did not err in determining that the Schelskes cannot exclusively rely upon the Material Safety Data Sheets to establish their prima facie claim of product liability.

C. Did the District Court err in not accepting the Schelskes legal assertion that once the plaintiffs produce evidence of multiple product "indivisible injury" the causation element of the claimants' burden of proof is satisfied and the burden shifts to the manufacturer to prove that their product did not cause injury?

The Schelskes assert that the principles of joint and several liability provide the means of achieving fairness where there are

15

multiple defendants and multiple products which contain a variety of toxic or hazardous chemicals which combine to cause injury. They argue that it is not the responsibility of the injured party to allocate the harm among various tort feasors.

The authority provided by the Schelskes for this assertion is § 52, Prosser on Torts, and § 433A, Restatement (Second) of Torts (1986). Neither of these sections absolves an injured party of the burden of first establishing causation. These sections provide only that once a defendant's conduct has been determined to be a cause of some damage suffered by the plaintiff then issues of apportionment can arise. The proof of causation is a necessary predicate to a claimant's burden of proof in a product liability action. See § 27-1-719, MCA. We have determined the record in this case does not provide evidence that any specific substance caused specific harm to Mischelle Schelske, and therefore we need not address the issue of apportionment as it relates to damages and not causation.

We affirm the District Court's amended order granting summary judgment in favor of the defendants.

_____
Justice

We concur:

_____

16

_____

_____

_____
                Justices

17

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.

Assuming for the purpose of this case only (because the plaintiffs have not argued otherwise), that the District Court had the authority to require that plaintiffs prove their case prior to trial, without any shifting of the burden pursuant to normal summary judgment procedures, I conclude that the plaintiffs' affidavits, when read in combination with each other, were sufficient to establish that products produced by the defendants included toxic chemicals which contributed as causes to specific injuries sustained by Mischelle Schelske.

The Schelskes submitted affidavits from three different professionals in response to the District Court's case management order. The first was from Jack Thrasher, Ph.D., a toxicologist from New Mexico; the second from Curt Kurtz, M.D., Mischelle's attending physician; and the third from Gunnar Heuser, M.D., a physician with extensive experience in the effect of toxic chemical exposure.

Dr. Thrasher indicated that he reviewed the products identified by Mischelle as those with which she had come into contact during the course of her employment, and also reviewed the Material Safety Sheets pertaining to each product. He listed those products by name, manufacturer, and the chemicals included in each product. He also listed products for which the chemical components had not been adequately identified by the manufacturer and for which further information was required. He identified typical

18

adverse effects from the types of chemicals which were included in the list and stated that in his opinion, daily exposure to a combination of these chemicals caused Mischelle's physical ailments. He described her injuries as central and peripheral neuropathy, the presence of auto-antibodies in her immune system, and injuries to her organs, vascular system, and nervous system as a result of the auto-antibodies' presence. In his letter attached to his affidavit, he stated that:

> In short, the exposure to multiple chemicals and her symptom complex indicate that Ms. Schelske suffers from multiple organ injuries. These type of injuries have been collectively termed multiple chemical sensitivity by various clinicians.

> In conclusion, Ms. Schelske's current health problems are permanent. It is my opinion, within a reasonable degree of scientific and toxicologic probability, that her chronic daily exposure to emissions from various cosmetic products is directly related to her chronic health problems.

Dr. Curt G. Kurtz stated, in his affidavit, that he is a medical doctor practicing in Bozeman and had treated Mischelle Schelske for the past year and was, therefore, familiar with her medical condition. It was his opinion that Mischelle had suffered injuries as a result of exposure to chemicals in the work place. He stated that her injuries include reactive airway disease and multiple organ injuries. He stated that she was also being evaluated for cognitive deficits due to chemical exposure. He had reviewed the affidavit of Dr. Jack Thrasher and stated overall agreement with its contents. He stated that all of the chemicals listed in the Thrasher affidavit are toxic to some extent and

19

likely caused or contributed to the various injuries sustained by Mischelle.

In his affidavit dated August 17, 1995, Dr. Heuser stated that during the previous month he and assorted other specialists had seen and examined Mischelle, and that based upon those examinations, and his consideration of the list of products to which she indicated she had been exposed, along with the information about those products included in the Material Safety Data Sheets, he believed that certain of the chemicals included in those products caused injuries to Mischelle. He then listed specific chemicals and the specific disease suffered by Mischelle which was associated with that chemical. He introduced the lists by stating in his affidavit that:

> A list of the injuries sustained by Ms. Schelske, though not by any means an exhaustive list, is presented along with documentation from the medical literature which confirms that the symptoms and injuries sustained by Mischelle Schelske are in fact the result of repeated exposure to the said chemicals within the identified products.

He went on to state that:

> Chemicals in defendants' products [are] associated with lung disease, including irritation of mucus membranes, storage disease, asthma, reactive airway dysfunction syndrome, sensitization, atelectasis, bronchiectasis, interstitial pulmonary fibrosis and lung cancer. Mischelle Schelske has exhibited symptoms compatible with and suggestive of all of the foregoing, with the exception that lung cancer has not yet been diagnosed. <u>The list of diseases and injuries below are part of what Ms. Schelske suffers from in my medical opinion</u>.

(Emphasis added.)

20

In other words, the affidavit of Jack Thrasher, Ph.D., identified the chemical component of each of the products to which Mischelle had been exposed. The affidavit Gunnar Heuser, M.D., identified the injury that, in his opinion, Mischelle has sustained as a result of exposure to each of the chemical components. Both affidavits also stated that without further information from the manufacturers, there were some products whose chemical components were not known. However, it clearly is not correct, as the District Court concluded, that Dr. Heuser's affidavit failed to list Mischelle's injuries, and failed to identify chemicals which contributed as a cause of those injuries.

I conclude that the Schelskes provided all of the information that could reasonably have been provided or required at this stage of pretrial proceedings, and that that information was certainly adequate to enable the defendants to proceed with discovery by further depositions of the experts who had submitted affidavits. If further identification of specific time periods during which exposure occurred, or the nature of consequences from specific chemicals was necessary in order to defend against this case, the defendants had all of the information they needed with which to begin discovery of those details.

I therefore conclude that if the District Court ever had authority to require the plaintiffs to prove their case prior to trial in as great a detail as was required by the District Court's case management order, then that order was satisfied by the information summarized above.

21

For these reasons, I dissent from the majority opinion. I would reverse the District Court order granting summary judgment to the defendants.

_____
Justice

January 2, 1997

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

John C. Doubek
Small, Hatch, Doubek & Pyfer
P.O. Box 236
Helena, MT 59624-0236

John D. Stephenson
Jardine, Stephenson, Blewett & Weaver, P.C.
P.O. Box 2269
Great Falls, MT 59403

Susan P. Roy, Esq.
Garlington, Lohn, & Robinson
P.O. Box 7909
Missoula, MT 59807-7909

Ronald F. Waterman
Gough, Shanahan, Johnson & Waterman
P.O. Box 1715
Helena, MT 59624-1715

Randy J. Cox
Boone, Karlberg & Haddon
P.O. Box 9199
Missoula, MT 59807-9199

John Poston
Harrison, Loendorf & Poston, P.C.
2225 11th Ave., Suite 21
Helena, MT 59601

Gene A. Picotte
Attorney at Law
1066 Helena Ave.
Helena, MT 59601

Curtis G. Thompson
Thompson & Jacobsen, P.C.
P.O. Box 2799
Great Falls, MT 59403-2799

John J. Soltys
Cozen and O'Connor
1201 3rd Ave., Ste. 5200
Seattle, WA 98101

Steve Reida
Landoe, Brown, Planalp & Braaksma, P.C.
P.O. Box One
Bozeman, MT 59771-0001


Peter F. Habein & Michael S. Lahr
Crowley, Haughey, Hanson, Toole & Dietrich
P.O. Box 797
Helena, MT 59624

John Maynard
Browning, Kaleczyc, Berry & Hoven, P.C.
P.O. Box 1697
Helena, MT 59624

Gary M. Zadick
Ugrin, Alexander, Zadick & Higgins, P.C.
P.O. Box 1746
Great Falls, MT 59403

Dennis P. Clarke
Smith Walsh, Clarke & Gregoire
P.O. Box 2227
Great Falls, MT 59403-2227

Mike Mulroney
Luxan & Murfitt
P.O. Box 1144
Helena, MT 59624

Brendon J. Rohan, Esq.

Poore, Roth & Robinson, P.C.
1341 Harrison Ave.
Butte, MT 59701

Steven T. Potts
Jardine, Stephenson, Blewett & Weaver, P.C.
P.O. Box 2269
Great Falls, MT 59403-2269

Steven S. Carey, Esq.
Carey, Meismer & McKeon
P.O. Box 8659
Missoula, MT 59807-8659

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy