No. 98-033

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 74

294 Mont. 46

975 P.2d 1264

VALERY Y. MEYER and JEFF C. MEYER,

Plaintiffs and Appellants,

v.

CREATIVE NAIL DESIGN, INC., a foreign corporation; OPI PRODUCTS, INC.,

a foreign corporation; CLAIROL, INC., a foreign corporation; HELENE CURTIS,

INC., a foreign corporation; NEXXUS PRODUCTS COMPANY, a foreign

corporation; THE ADU COMPANY, a foreign corporation; REVLON

PROFESSIONAL PRODUCTS, INC., a foreign corporation; COSMETIC

ARTS, a foreign corporation; AMERICAN INTERNATIONAL, a foreign

corporation; SEBASTIAN INTERNATIONAL, a foreign corporation;

UNIT CHEMICAL CORPORATION, a foreign corporation; PAUL

MITCHELL (BOCCHI LABORATORIES), MATRIX ESSENTIALS, INC.,

a foreign corporation; MALIBU 2000, a foreign corporation; KING RESEARCH,

INC., a foreign corporation; HIGHLAND CORPORATION, a foreign

corporation; GOLDEN EAGLE CONSTRUCTION CO., INC., a Montana

corporation; PALMER DUNCAN CONSTRUCTION COMPANY, a Montana

corporation; and DOES and ROES ONE THROUGH TEN,

Defendants and Respondents.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

No

Jack M. Scanlon, Attorney at Law; Helena, Montana

Leonard J. Haxby, Attorney at Law; Butte, Montana

For Respondents:

Ronald F. Waterman; Gough, Shanahan, Johnson & Waterman;

Helena, Montana (Clairol, Inc.)

Susan P. Roy; Garlington, Lohn & Robinson, PLLP; Missoula,

Montana (OPI Products)

John D. Stephenson; Jardine, Stephenson, Blewett & Weaver, P.C.;

Great Falls, Montana (Creative Nail Design)

Randy J. Cox; Boone, Karlberg & Haddon; Missoula, Montana

(Helene Curtis, Inc.)

John Poston; Harrison, Loendorf & Poston, P.C.; Helena, Montana

(Nexxus Products Company)

Gene A. Picotte, Attorney at Law; Helena, Montana (Adu Company)

Brendon J. Rohan; Poore, Roth & Robinson; Butte, Montana

(King Research, Inc.)

Peter F. Habein; Crowley, Haughey, Hanson, Toole & Dietrich;

Billings, Montana (Sebastian International and Bocchi Laboratories)

John H. Maynard; Browning, Kaleczyc, Berry & Hoven; Helena,

Montana (Unit Chemical Corporation)

Gary M. Zadick; Ugrin, Alexander, Zadick & Higgins, P.C.;

Great Falls, Montana (John Paul Mitchell Systems)

Dennis P. Clarke; Smith, Walsh, Clarke & Gregoire; Great Falls,

Montana (Matrix Essentials. Inc.)

Michael J. Mulroney; Luxan & Murfitt; Helena, Montana (Malibu 2000)

Curtis G. Thompson; Thompson & Jacobson, P.C.; Great Falls,

Montana; and John J. Soltys; Cozen & O'Connor; Seattle, Washington

(Revlon Professional Products)

Steven W. Reida; Landoe, Brown, Planalp & Braaksma; Bozeman,

Montana (American International)

Bert A. Fairclough; James, Gray & McCafferty; Great Falls, Montana

(Highland Corporation and Capital Hill Mall)

P. Keith Keller; Keller, Reynolds, Drake, Johnson & Gillespie, P.C.;

Helena, Montana (Golden Eagle Construction)

Gregory G. Smith; Smith Law Offices; Great Falls, Montana

(Palmer-Duncan Construction Co.)

Submitted on Briefs: June 11, 1998

Decided: April 15, 1999

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

**¶1. Valery and Jeff Meyer appeal from the order granting summary judgment in favor of the defendant cosmetic manufacturers as entered by the First Judicial District Court, Lewis and Clark County. We reverse.**

**¶2. The issues on appeal are as follows:**

**¶3. 1. Did the District Court err when it adopted the cosmetic manufacturers' case management order?**

**¶4. 2. Does the case management order violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and Article II, Section 17, of the Montana Constitution?**

**¶5. 3. Did the District Court err when it granted summary judgment in favor of the cosmetic manufacturers?**

FACTUAL AND PROCEDURAL BACKGROUND

**¶6. Valery Meyer worked as a beautician at the J.C. Penney store in the Capital Hill Mall in Helena, Montana, from August 1989, until July 1993. On March 29, 1995, Valery and Jeff Meyer, Valery's husband, filed suit against fourteen cosmetic manufacturers and marketers, two construction companies, the owner of the beauty salon, and J.C. Penney, her employer. Their complaint alleged that while at work, Valery was exposed to a variety of toxic substances which made her ill. As a result of**

her illness, Valery was unable to continue to work and quit her job in July 1993.

**¶7. In their complaint, the Meyers assert that each cosmetic manufacturer designed, manufactured, and sold products that were defective and "directly and proximately damaged" them. Valery alleged that each product was inherently dangerous to her as a result of using "each and every of the products usually on a daily basis."**

**¶8. After being served with the complaint, some of the cosmetic manufacturers filed discovery requests and motions for more definite statements from the Meyers. In their discovery requests, several cosmetic manufacturers asked the Meyers to set forth those facts which support the Meyers' allegations that the cosmetic manufacturers negligently manufactured their products, that they failed to give adequate warning, that they breached implied and express warranties, and that their products were in a defective or unreasonably dangerous condition. By March 1996, the Meyers began to respond to the initial discovery requests submitted by the cosmetic manufacturers. However, the cosmetic manufacturers believed that the Meyers' responses failed to provide the requested information.**

**¶9. On March 22, 1996, cosmetic manufacturer Helene Curtis, Inc., filed a motion for a preliminary pretrial conference and for entry of a case management order. All of the cosmetic manufacturers joined in the motion. The Meyers did not object to the entry of a case management order, but offered their own version. On April 14, 1997, the District Court adopted the case management order proposed by Helene Curtis, Inc. The case management order required the Meyers to provide the following:**

(a) A statement specifically identifying each product, by manufacturer, that Plaintiff, Valery Meyer, claims to have caused her harm;

(b) A statement specifically describing of the circumstances of the alleged exposure to each of the products identified in response to the requirements of paragraph (a), including the time period during which [Valery] alleges exposure and the activities which resulted in the exposure. If [Valery] claims exposure as a result of a specific incident or incidents, as opposed to ordinary use in the course of her work as a beautician, the statement shall include for each such incident the date and location of the incident, the specific product or products involved, a detailed description of the incident, a detailed description of the manner in which that incident exposed [Valery] to the product or products and a description of the route or routes of exposure;

No

(c) A statement identifying each chemical in each of the products that [Valery] claims to have harmed her in any way. The chemical shall be identified specifically by chemical name rather than a generic name (e.g., "sodium laurylether sulfate" rather than "shampoo");

(d) An affidavit from a physician stating his or her opinion, based on a reasonable degree of medical certainty, that [Valery] has suffered injuries as a result of exposure to chemicals. The affidavit shall list:

(i) all injuries, illnesses or conditions suffered by [Valery] that, in the opinion of the physician, were caused by the alleged exposure;

(ii) shall specify the chemical or chemicals that, in the opinion of the physician, caused each injury, illness and condition listed; and

(iii) shall state the scientific and medical bases for the physicians' opinion, complete with references to medical and/or scientific literature supporting or forming the basis for the opinion.

It will not be sufficient for the affidavit to state a "laundry list" of injuries and chemicals. Each injury, illness or condition must be itemized and specifically linked to the chemical or chemicals believed to have caused that particular injury, condition or illness.

The District Court prohibited the Meyers from serving further discovery until they complied with the case management order.

**¶10. By May 13, 1997, the Meyers filed the affidavits of Valery and Gunnar Heuser,**

**M.D. On June 16, 1997, defendant Helene Curtis, Inc. filed a motion to strike Dr. Heuser's affidavit on the grounds that it failed to comply with the case management order. Also on that day, cosmetic manufacturers Clairol, Inc. and OPI Products, Inc. filed a motion to stay discovery. The District Court held a hearing on the matter and took under advisement the motion to strike Dr. Heuser's affidavit.**

**¶11. On November 27, 1997, the District Court granted the cosmetic manufacturer's motion to strike Dr. Heuser's affidavit. Thereafter, on December 17, 1997, the cosmetic manufacturers moved for summary judgment. On December 18, 1997, the parties stipulated to an entry of an order which granted summary judgment to the cosmetic manufacturers. By stipulating, the Meyers retained all rights to appeal from the District Court's grant of summary judgment, including the court's ruling on the motion to strike Dr. Heuser's affidavit.**

**¶12. The District Court granted the motion for summary judgment in favor of the cosmetic manufacturers and certified the judgment as final pursuant to Rule 54(b), M.R.Civ.P. On January 12, 1998, the Meyers timely filed their notice of appeal.**

STANDARD OF REVIEW

**¶13. This Court's standard of review in appeals from summary judgment rulings is *de novo*. *See Treichel v. State Farm Mut. Auto. Ins. Co.* (1997), 280 Mont. 443, 446, 930 P.2d 661, 663 (citing *Motarie v. Northern Montana Joint Refuse Disposal Dist.* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; *Mead v. M.S.B., Inc.* (1994), 264 Mont. 465, 470, 872 P.2d 782, 785). This Court reviews a summary judgment order entered pursuant to Rule 56, M.R.Civ.P., based on the same criteria applied by the district court. *See Treichel*, 280 Mont. at 446, 930 P.2d at 663 (citing *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903).**

**¶14. In proving that summary judgment is appropriate:**

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of material fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. [This Court] review[s] the legal determinations made by a district court as to whether the court erred.

*Bruner, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted).*

**¶15. In order to be granted summary judgment, the "moving party has the burden of showing a complete absence of any genuine issue as to all facts considered material in light of the substantive principles that entitle the moving party to judgment as a matter of law and all reasonable inferences are to be drawn in favor of the party opposing summary judgment." *Kolar v. Bergo* (1996), 280 Mont. 262, 266, 929 P.2d 867, 869.**

## DISCUSSION

**¶16. The Meyers raise Issues 1 and 2 for the first time on appeal. We have held that on appeal, we will not consider issues that were not properly addressed in the district court. *See In re Marriage of Glass* (1985), 215 Mont. 248, 697 P.2d 96. Accordingly, the only issue we will address in this case is issue three, whether the District Court erred when it granted summary judgment in favor of the cosmetic manufacturers.**

**¶17. In its decision to grant summary judgment in favor of the cosmetic manufacturers, the District Court relied on its order striking Dr. Heuser's affidavit for failing to comply with the case management order. The District Court determined that Dr. Heuser's affidavit simply incorporated by reference the report of a toxicologist, Jack Thrasher, Ph.D., who is not a medical doctor. The court noted that Dr. Thrasher referred to potential problems associated with various products but did not provide the specificity required by the case management order. In the order striking the affidavit, the court concluded that:**

The affidavit fails to explain which chemical or chemicals caused which injuries. It further fails to explain the scientific basis for Heuser's conclusion that Valery Meyer's injuries were caused by a particular chemical or chemicals.

**¶18. On appeal, the Meyers argue that the District Court erred when it struck Dr. Heuser's affidavit. The Meyers claim that the affidavit sufficiently complies with the intent and purpose of the case management order, and does, in fact and law, present a *prima facie* case of product liability against the cosmetic manufacturers. Thus, they argue that the District Court erred when it granted summary judgment in favor of the cosmetic manufacturers.**

No

¶19. The cosmetic manufacturers counter that the District Court did not err when it granted their motion for summary judgment. They state that pursuant to the case management order, the Meyers were required to establish the *prima facie* elements of a product liability action and that they failed to do so by not specifically identifying each product alleged to have caused Valery harm and by not describing the circumstances of her exposure to each product. Furthermore, the cosmetic manufacturers argue that the Meyers did not submit a physician's affidavit which identified Valery's specific injuries and the chemicals which caused those injuries. They maintain that Dr. Heuser's affidavit merely provided vague statements about the possible effects of various chemicals and that it did not comply with the case management order.

¶20. For the reasons discussed below, we determine that the District Court erred when it struck Dr. Heuser's affidavit for failing to comply with the case management order. We further conclude that the District Court erred when it granted the cosmetic manufacturers' motion for summary judgment.

¶21. A person who sells a product in a defective condition unreasonably dangerous to a user or consumer is liable for the physical harm caused by the defective product. Section 27-1-719, MCA. In a product liability action, in order to establish a *prima facie* case of strict liability, a plaintiff must prove the following elements:

(1) The product was in a defective condition, "unreasonably" dangerous to the user or consumer;

(2) The defect caused the accident and injuries complained of; and

(3) The defect is traceable to the defendant.

*Brown v. North American Mfg. Co.* (1978), 176 Mont. 98, 105-06, 576 P.2d 711, 716.

¶22. Pursuant to Rule 16, M.R.Civ.P., the District Court issued a case management order to manage the early stages of discovery and identification of claims regarding Valery's exposure to the chemicals and causation of her damages. The case management order required the Meyers to establish the *prima facie* elements of a

product liability claim. In sum, the Meyers were required to establish (1) product identification; (2) use and exposure; and (3) causation linking the product defect to an identifiable injury.

¶23. In response to the case management order, the Meyers produced two affidavits. The first affidavit was from Valery. Her affidavit set forth a listing by company of each product which she used or was exposed to and the time period and circumstances of the exposures. The cosmetic manufacturers did not object to Valery's affidavit.

¶24. The second affidavit was from Gunnar Heuser, M.D., a physician with extensive knowledge of the effect of toxic chemical exposure. Dr. Heuser personally examined Valery and reviewed the examinations and tests conducted by numerous physicians under his supervision. In order to diagnose Valery, Dr. Heuser partially relied on information and the report compiled by Dr. Thrasher. Dr. Thrasher's report set forth the specific toxic chemicals contained in the cosmetic manufacturers' products that Valery identified. Dr. Thrasher's report also set forth the scientific and medical authorities regarding the causal connection between the chemical exposure and injury. Based on our review of these affidavits, we conclude that they satisfy the four requirements set out in the case management order to establish a *prima facie* claim of product liability for many of the products to which Valery was exposed.

¶25. The first requirement of the case management order was a statement which specifically identified each product, by manufacturer, that the Meyers claim to have harmed Valery. The combined affidavits of Dr. Heuser and Valery state and list the identity of each specific product, by manufacturer, that Valery has identified as having caused her injuries (e.g., Creative Nail Design, Solar Nail liquid and Contours liquid, Primacide, Nail Fresh, etc.). Valery's affidavit sufficiently complies with the case management order and provides the information necessary for each manufacturer to know the identity of each product and therefore to defend against the Meyers' claims.

¶26. The second requirement of the case management order is a specific description of the circumstances of the alleged exposure to each of the products identified in Valery's list including the time period during which Valery alleges exposure and the activities which resulted in the exposure. Once again, Valery's affidavit sets forth a listing by company of each product which she used or was exposed to, and the time

period involved and the circumstances of exposure, i.e., dermal or inhalation or both, on a daily, hourly, and minute basis for many of the products she listed. This information substantially complies with the case management order and helps establish the second element of a *prima facie* case of product liability for many of the products.

¶27. The third requirement, a statement which identifies each chemical, by chemical name, in each of the products that Valery claims to have harmed her in any way, and the fourth requirement, a physician's affidavit which identifies the specific injuries suffered by Valery, the specific chemicals which caused her injuries, and the scientific or medical support for the physician's opinion of the causal connection between the chemical exposure and Valery's injuries, are satisfied by Dr. Heuser's affidavit and Dr. Thrasher's report as to many of the products.

¶28. Attached and incorporated by reference to Dr. Heuser's affidavit is a report drafted by Dr. Thrasher which identifies each chemical in the products that Valery claims to have harmed her. By referencing the product listed by Valery in her affidavit, Dr. Thrasher identified the chemical name or chemical components of each product, reviewed the toxicology of each chemical, and provided a list of references and literature to support the causal connection between the chemical and the possible injuries as a result of exposure to the chemical. Although Dr. Thrasher's report states that without further information from the manufacturer, there are some products whose chemical components are not known, his report provides most of the cosmetic manufacturers with more than ample identification of the products which Valery claims to have harmed her. The third requirement of the case management order is therefore clearly satisfied as to many of the products.

¶29. On July 24, 1995, Dr. Heuser personally examined Valery and performed a comprehensive evaluation for her multi-system complaints. Additionally, six other physicians under Dr. Heuser's auspices personally examined Valery. As a result of these examinations, and his consideration of the list of products to which she indicated she had been exposed, along with the information about those products included in the Material Safety Data Sheets, Dr. Heuser concluded in his affidavit that he and the other six doctors collectively diagnosed Valery as having seven specific chemical injuries. Dr. Heuser describes these seven chemical injuries as follows:

1. Immune suppression as demonstrated by decreased Natural Killer Cell Activity and decreased mitogen response;

2. Upper and lower respiratory problems as determined by the presence of chronic rhinitis/ laryngitis and persistent coughing;

3. Sensory polyneuropathy as determined by changes in current perception threshold in the trigeminal, peroneal and ulnar nerves;

4. Irritable bowel syndrome;

5. Vestibular dysfunction and endolymphatic hydrops;

6. Changes in cerebral perfusion; and

7. Excessive dryness of the eyes resulting from loss of goblet cells.

Dr. Heuser also notes that Dr. Thrasher independently diagnosed the above seven chemical injuries in his December 12, 1995, report and that, in Dr. Thrasher's opinion, daily exposure to a combination of chemicals caused Valery's physical ailments. Dr. Heuser specifically relied upon the data provided by Dr. Thrasher for the basis of his opinion and incorporated it by reference into his affidavit. He stated that "[t]he attached documents state the identity of each product, by manufacturer, that Valery Meyer has identified as having caused her injuries and, in addition, identifies each hazardous toxic chemical by chemical name and the injury caused, together with supporting medical and/ or scientific literature that serves as the basis for my opinion." Dr. Heuser then concluded that the chemical injuries suffered by Valery "were directly and proximately caused by her

use and exposure to those hazardous toxic chemicals that have been identified by Dr. Thrasher," while she was employed as a beautician at the J.C. Penney beauty salon.

**¶30. It is evident that the District Court, in part, struck Dr. Heuser's affidavit because he incorporated by reference the information provided by Dr. Thrasher. We conclude, however, that there is sufficient opinion testimony provided in the affidavit to comply with the case management order for many of the products to which Valery was exposed. Certainly, as the case progresses, Dr. Heuser will be subjected to cross-examination in a deposition or at trial and his opinions may be appropriately challenged. However, Dr. Heuser's reliance upon the data of Dr. Thrasher and numerous other specialists is warranted pursuant to Rule 703, M.R.Evid., which provides:**

The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in a particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

**¶31. Dr. Heuser concluded in his affidavit that according to his expert medical opinion, the seven chemical injuries were directly and proximately caused by Valery's use and exposure to the chemicals found in the cosmetic manufacturers' products while she was employed as a beautician at the J.C. Penney beauty salon. The scientific and medical bases for Dr. Heuser's opinion are provided in his own affidavit and in Dr. Thrasher's report which was a basis for Dr. Heuser's opinion. Thus, Dr. Thrasher's report, in conjunction with Dr. Heuser's affidavit, provides the expert medical opinion which establishes the causal link between many of the cosmetic manufacturers' products and Valery's identifiable injuries. Dr. Thrasher states scientifically what injury the chemicals may cause, and Dr. Heuser medically states the chemical injuries that were actually caused based on his personal medical examination of Valery. The information provided in Dr. Heuser's affidavit, in combination with Dr. Thrasher's report, therefore, sufficiently satisfies the fourth requirement of the case management order and the *prima facie* case of product liability as to many of the products identified by Valery.**

**¶32. The affidavits provided by the Meyers, when read in combination with each other, were sufficient to establish that many of the products produced by the**

defendant cosmetic manufacturers included toxic chemicals which contributed as causes to specific injuries sustained by Valery Meyer. Although Dr. Thrasher's report states that without further information from the manufacturers, there were some products whose chemical components were not known, it is clearly not correct that the affidavits failed to list Valery's injuries and failed to identify chemicals which contributed as a cause of those injuries.

¶33. The cosmetic manufacturers point out examples where the Meyers did not comply with the case management order. It is certainly true that by cross-referencing the affidavits, which one is required to do, there are products identified about which the information is incomplete. It is also true, however, that there was clear compliance as to many of the products. For example, the product Nail Fresh, manufactured by Creative Nail Design, contains dimethyl ketone and diethyl ether. Dr. Thrasher's report lists the associated illnesses with exposure to these chemicals, as well as scientific references. Dr. Heuser then states in his affidavit that Valery suffers from seven identifiable maladies as a result of exposure to these chemicals. Whether Dr. Heuser's opinion and causation testimony is scientifically or medically valid, is not the issue. The Meyers have clearly complied with the case management order as to this product.

¶34. We also recognize that the District Court may properly consider dismissal of some of the products from this litigation on the basis of the information provided; however, it was not proper for the court to strike Dr. Heuser's entire affidavit, which in turn became the basis for summary judgment as to all products and all manufacturers.

¶35. We conclude that the Meyers provided sufficient information at this stage of pretrial proceedings to allow the case to move forward, and that the information was adequate to enable the cosmetic manufacturers to proceed with discovery by further depositions of the experts who submitted affidavits.

¶36. Accordingly, we conclude that the four requirements of the District Court's case management order were satisfied by the information discussed above as to many of the products and, therefore, that the District Court erred when it granted summary judgment to the cosmetic manufacturers.

¶37. Because the companion case, *Schelske v. Creative Nail Design, Inc.* (1997), 280

Mont. 476, 933 P.2d 799, addresses similar affidavits and reports from Dr. Heuser and Dr. Thrasher, it is important that we comment on its relevance. In *Schelske*, we upheld an order which granted summary judgment in favor of the cosmetic manufacturers for the Schelskes' failure to comply with an identical case management order. *See Schelske,* 280 Mont. at 486, 933 P.2d at 805.

¶38. The District Court determined, and the cosmetic manufacturers argue, that our decision in *Schelske* should control the outcome of this case. The District Court noted in its order granting summary judgment in this case that it reviewed the *Schelske* affidavits and concluded that the affidavits here do not go further than the deficient affidavits in *Schelske.*

¶39. Our review of the *Schelske* affidavits, however, compels us to reach a different conclusion. Both Dr. Heuser and Dr. Thrasher provided affidavits in the *Schelske* case. In that case, the majority stated that Dr. Heuser's and Dr. Thrasher's affidavits did not satisfy the first requirement of the case management order because the affidavits failed to specifically identify the product names. *See Schelske,* 280 Mont. at 483, 933 P.2d at 803. The majority noted that Dr. Thrasher's affidavit referred to generic terms such as "shampoos" and "bleach powders." *Schelske,* 280 Mont. at 483, 933 P.2d at 803. Dr. Heuser provided three affidavits; the first two did not include a list of specific product names, and the third did provide a list but it was incomplete. The majority concluded that the affidavits did not comply with the case management order because they failed to state each specific product that Mischelle Schelske personally identified as having caused her harm. *See Schelske,* 280 Mont. at 484, 933 P.2d at 803.

¶40. In the present case, Valery Meyer submitted two affidavits to comply with the case management order, hers and Dr. Heuser's. Both she and Dr. Heuser specifically listed the products in their affidavits.

¶41. The second element of the case management order in both cases required the plaintiff to describe the circumstances of the alleged exposure. In *Schelske,* we concluded that the Schelskes did not comply adequately with the case management order as to this requirement. *See Schelske,* 280 Mont. at 484, 933 P.2d at 803-04. The District Court's order in this case, however, is silent regarding Valery's affidavit, and the cosmetic manufacturers did not move to strike it. Therefore, we conclude that the second element is not at issue.

¶42. The third element of both case management orders required that the plaintiff provide a physician's affidavit which identifies the specific injuries, the specific chemicals which caused the injuries, and the scientific or medical basis for a causal connection between the exposure and the injury. In *Schelske*, the majority rejected Dr. Thrasher's affidavit because he was not a medical doctor. *See Schelske*, 280 Mont. at 485, 933 P.2d at 804. Mischelle Schelske also provided an affidavit of Dr. Kurtz, her local treating doctor in Bozeman. The majority stated that Dr. Kurtz's affidavit was somewhat general and merely listed symptoms, with very little detail as to a specific diagnosis, and concluded with an acceptance of Dr. Thrasher's opinions. *See Schelske*, 280 Mont. at 485, 933 P.2d at 804. Dr. Heuser's first two affidavits did not enumerate specific injuries or illnesses or state the specific chemicals alleged to have caused Mischelle Schelske's injuries. *See Schelske*, 280 Mont. at 485, 933 P.2d at 804. The majority concluded that Dr. Heuser's third affidavit was deficient because he stated that certain products are merely "associated" with certain diseases and that Mischelle Schelske's symptoms were "compatible with" certain illnesses. *See Schelske*, 280 Mont. at 486, 933 P.2d at 804-05.

¶43. In the present case, Dr. Heuser's affidavit is more definitive. In his affidavit, he provides specific diagnoses, including seven itemized conditions from which Valery suffers. He provides his medical opinion that the conditions were directly and proximately caused by Valery's use and exposure to the chemicals identified in Dr. Thrasher's report which he attached to his affidavit. His affidavit lists the products identified by Valery and correlates each diagnosis to a specific product. Attached to Dr. Heuser's list of products are letters written by Dr. Thrasher which explain the chemical content of each of the products listed by Dr. Heuser. Dr. Heuser cross-referenced the chemicals to the corresponding products which he concluded injured Valery.

¶44. We conclude it was error for the District Court to strike the entire affidavit of Dr. Heuser and then grant summary judgment to all the cosmetic manufacturers on all products. Although the Meyers may not have completely complied with the case management order as to every product listed, the Meyers did comply with regard to many of the products. Further pretrial discovery and motions could have served to eliminate those products for which insufficient information was provided.

¶45. We reverse the judgment of the District Court and remand this case for further proceedings consistent with this opinion.

/S/ JIM REGNIER

We Concur:

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART

Chief Justice J.A. Turnage concurs and dissents as follows.

¶46 I concur with the majority opinion as to Issues 1 and 2, but I dissent as to Issue 3.

¶47 In this action, Meyer brought suit against eighteen named and ten unnamed defendants for her alleged injuries from chemical exposure while she was employed at a beauty salon. The Case Management Order was made at the request of defendant Helene Curtis, Inc., as a means of allowing for the most expeditious and cost-effective way of proceeding through the preliminary stages of this potentially very complicated lawsuit. The order stated that it was designed to manage identification of Meyer's claims regarding exposure and causation.

¶48 The Case Management Order required Meyer to file and serve a statement identifying the chemicals in each of the products that she claimed to have harmed her. It further required

[a] statement from a physician stating his or her opinion, based on a reasonable degree of medical certainty, that the Plaintiff has suffered injuries as a direct and proximate result of exposure to those chemicals. The statement shall list all injuries, illnesses, or conditions suffered by the Plaintiff that, in the opinion of the physician, were caused by the alleged exposure, and whether each injury, illness or condition can be specifically linked to the chemical or chemicals believed to have caused the same.

As the majority has stated, the Case Management Order was based on one used in *Schelske*. As the majority has also stated, the essence of the order was to require Meyer to establish three elements: product identification, use and exposure, and causation linking the product defect to an identifiable injury.

¶49 In response to the Case Management Order, Meyer filed and served two affidavits, one by herself and the second by Dr. Gunnar Heuser. In her affidavit, Meyer addressed the product identification and use and exposure requirements of the Case Management Order. In his affidavit, Dr. Heuser listed seven chemical injuries to Valery Meyer as found by him and other doctors in "a comprehensive evaluation for her multi system complaints" and also "independently diagnosed by Dr. Jack Thrasher in his report dated December 12, 1995, in which I concur." Dr. Heuser further stated:

[I]t is my expert opinion that the above chemical injuries, one through seven, suffered by Valery Meyer were directly and proximately caused by her use and exposure to those hazardous toxic chemicals that have been identified by Dr. Thrasher, in his attached reports to Mr. Scanlon, while she was employed as a beautician at the J.C. Penneys beauty salon in Helena, Montana.

While Dr. Heuser's affidavit identifies the seven specific chemical injuries to Meyer, its answer to the requirement concerning a physician's statement of causation is problematical.

¶50 Attached to Dr. Heuser's affidavit are 78 pages attributed in part to Jack Thrasher, who is described on his letterhead as a "medical/legal consultant," and who was identified in *Schelske* as a Ph.D. toxicologist. Among those pages, fourteen separate lists (authorship not indicated) show the names of products manufactured by the fourteen cosmetic manufacturer and marketer defendants. Across from the names of most products in each of those lists, under the caption "Chemical Injury," is listed one or more numbers between 1 and 7. Those numbers apparently correspond to the numbers in the list of chemical injuries to Meyer as set forth in Heuser's affidavit. The remainder of the 78 pages consist of copies of letters from Thrasher to Meyer's attorney, describing possible adverse health effects of various chemicals in each of the products listed.

¶51 One basis for the Court's rejection of the affidavits in *Schelske* was that the list of chemicals and associated diseases therein was "merely a collection of potential consequences from contact with the chemicals in the products" which did not describe the particular injuries suffered by the plaintiff. *Schelske*, 280 Mont. at 485, 933 P.2d at 804.

Another basis for the Court's rejection was that the doctor's affidavit was vague and conclusory without providing the specific causation linking the product defect to an identifiable injury. *Schelske*, 280 Mont. at 486, 933 P.2d at 804-05.

¶52 Comparing the *Schelske* affidavits to those in the present case, the "improvements" in the affidavits in the present case are that Meyer has submitted her own affidavit which lists, by defendant, each product which she has identified as having caused her injuries and, in summary fashion such as "all day every day"and either "inhalation " or "dermal," describes the time period involved and circumstances of her exposure.

¶53 What is not different from the affidavits in *Schelske* is that Thrasher's letters are merely a list of a myriad of possible consequences from contact with various chemicals and are not tied to Meyer or to her particular injuries. Other than the choice of products named (of which there are well over two hundred), none of the information--for example, the necessary level of exposure believed to lead to the listed health effects--is correlated with Meyer's experience. Moreover, Thrasher's letters are only preliminary in nature, in that they include various requests by him for more information from Meyer's attorney, such as requests for information about the percentage concentrations of chemicals in various of the products and, as to some of the products, requests for identification of the specific chemicals present. As a result of his lack of complete information, Thrasher was unable to list possible consequences from contact with at least fifty of the listed products.

¶54 A third point concerning Thrasher's letters is that many of the adverse health effects listed--such as cancer, enlarged liver, skin burns, clonic convulsions, anorexia, and pulmonary edema--are problems from which Meyer has not alleged that she suffers. Finally, Thrasher makes statements not based upon medical or scientific knowledge--e.g., in providing support for his statement that fragrances may cause irritation to mucous membranes, Thrasher states "[f]or now, until specifics are known, the reference on fragrances would have to be personal knowledge based upon experience in a litigation involving fragrances."

¶55 As the majority points out, in rejecting Dr. Heuser's affidavit, the District Court reasoned that the affidavit failed to explain which chemical or chemicals were alleged to have caused which injuries and also failed to explain the scientific basis for Dr. Heuser's conclusion that Meyer's injuries were caused by a particular chemical or chemicals. Even though Dr. Heuser states that in his expert opinion Meyer's chemical injuries were "caused by her use and exposure to those hazardous toxic chemicals that have been identified by

Dr. Thrasher," the nature of Thrasher's letters, the basis for that opinion on causation, results in a causation link which, as in *Schelske*, is unacceptably vague and conclusory. Dr. Heuser's affidavit, in its entirety, simply does not answer the question of whether each injury, illness or condition can be specifically linked to the chemical or chemicals believed to have caused the same. I would conclude that the affidavits here cannot fairly be said to meet the District Court's Case Management Order. I would therefore affirm the summary judgment order entered by the District Court.

/S/ J. A. TURNAGE

Justice Karla M. Gray and Justice James C. Nelson join in the foregoing concurring and dissenting opinion of Chief Justice Turnage.

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON