No. 97-513

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 213

CARL WEISSMAN & SONS, INC.,

a Montana Corporation,

Plaintiff and Respondent,

v.

D & L THOMAS EQUIPMENT CORPORATION,

a Corporation,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert J. Emmons, Emmons & Sullivan, Great Falls, Montana

For Respondent:

Robert B. Pfennigs; Jardine, Stephenson, Blewett & Weaver, P.C.;

Great Falls, Montana

Submitted on Briefs: April 9, 1998

Decided: August 25, 1998

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶ On November 29, 1991, Carl Weissman & Sons, Inc. (CWS), filed suit in the Eighth Judicial District Court, Cascade County, against D&L Thomas Equipment Corporation (D&L) to collect delinquent lease payments owed to it under an equipment rental agreement. D&L appeals from the findings of fact, conclusions of law, and order, and the amended judgment entered by the District Court after a bench trial. We affirm.

¶ The following issues are on appeal:

¶ 1. Did the District Court err in concluding there was sufficient consideration in the contract between the parties?

¶ 2. Did the District Court err in concluding that the Agreement was not mutually canceled and rescinded by the parties?

¶ 3. Did the District Court err in concluding that CWS did not violate § 70-8-101, MCA (1989)?

¶ **4. Did the District Court err in concluding that CWS had not misrepresented the condition of the drill?**

¶ **5. Did the District Court abuse its discretion in excluding certain testimony regarding D&L's failure to make a lease payment to CWS?**

¶ **6. Did the District Court err in granting sanctions to the plaintiff?**

FACTUAL AND PROCEDURAL BACKGROUND

¶ **In February 1990, D&L initiated discussions with CWS over the proposed leasing of an Atlas-Copco Roc 712 rock drill. At the time, both D&L and CWS were distributors of Atlas-Copco drilling and mining equipment. The negotiations were conducted by Robert Cozad, branch manager of D&L in Tucson, Arizona, and James Richey, the CWS branch manger in Bozeman, Montana.**

¶ **D&L had three rock drilling machines in Tucson, but all were leased out and it needed an additional machine to lease to one of its customers, namely the Ashton Company. A written agreement was entered into between Richey of CWS and Cozad of D&L to lease the rock drill for three months, beginning March 1, 1990, and ending May 31, 1990. Payments were $7600 per month. The first payment was to be paid in advance and payments were to be made thereafter on the second of April and on the second of May.**

¶ **Cozad asserts that when he discussed the drill with Richey before it was shipped to Tucson, Richey represented that the drill was "like new" and had "very few hours on it." Richey testified that the drill had been purchased new by CWS four months before March 1, 1990. CWS asserts that it did a service and maintenance check on the drill prior to shipping.**

¶ **The drill was shipped from Bozeman on March 1, 1990, and arrived in Tucson on March 3, 1990. Cozad inspected the drill and sent it on to Mammoth, Arizona, for the Ashton job. D&L asserts that it began having problems with the drill immediately upon arrival.**

¶ **Critical to the written agreement between the parties is Paragraph 7. This**

paragraph required D&L to inspect the drill within ten days of receipt and unless within such time period D&L gave notice to CWS specifying any defects, the drill would be conclusively presumed to have been accepted by D&L in its then condition. The agreement further provides, at Paragraph 26, that all notices must be in writing and served by certified mail. Since the drill was received by D&L on March 3, 1990, Paragraph 7 would require that written notice of any defects should have been given to CWS prior to March 14, 1990. There are no allegations that D&L notified CWS in writing of any defects or problems with the drill prior to March 14, 1990. Paragraph 7 also provides that following the ten-day period, the lessee shall bear the expense of any necessary repairs, maintenance, and replacements for the drill. By D&L's own evidence, any repairs made by D&L were made subsequent to the ten-day inspection period.

¶ Cozad testified that he could not recall the exact dates that he contacted Richey concerning problems with the drill. However, his telephone records establish several calls to Richey between March 5, 1990, and March 22, 1990. Richey recalled the telephone calls, but contends they pertained to matters unrelated to the drill. More importantly, Richey testified that the first time he was told by Cozad that there were any problems with the drill was on March 22, 1990. He stated that Cozad telephoned him and that he then sent a fax to Cozad telling him not to return the drill because it might be diverted to another location. D&L alleges that Richey could not have sent the fax in response to the telephone call of March 22, 1990, because D&L's telephone records establish that the fax was sent before the telephone call. There is nothing in the record that clearly established that D&L gave notice of any problems with the drill any earlier than March 22, 1990.

¶ The parties hotly dispute the impact of Richey's March 22, 1990, fax. Cozad testified that he interpreted the fax as a cancellation of the written agreement. Richey alleges that he did not regard his fax of March 22, 1990, as canceling the agreement.

¶ In May 1990, while D&L still possessed the drill, CWS and Cozad began negotiations for a new six-month lease for the drill. Although CWS had not received any of the payments due under the March 1 agreement, CWS was willing to consider a new agreement as long as it included a firm commitment by D&L to buy the drill. However, the negotiations broke down and CWS demanded the return of the drill. Subsequently, D&L paid for its use of the drill during the month of June, but has never paid for any rent for the months of March, April, and May.

¶ During these negotiations, D&L subleased the drill to Spirit Drilling Co. in California. Spirit reported no problems with the drill and it was returned to CWS at the end of June.

¶ On November 29, 1991, CWS filed suit in the Eighth Judicial District Court, Cascade County, against D&L to collect the delinquent lease payments owed under the March 1, 1990, Agreement. Curiously, on January 21, 1992, D&L filed an answer denying any knowledge of the Agreement. D&L claimed that the first time it saw the Agreement was when it was served with the complaint and further maintained that the purported signature on the document was made by someone without authority to bind D&L.

¶ Until November 1993, D&L continued to deny, both in its pleadings and in its responses to written discovery requests, any knowledge of the Agreement. However, faced with CWS's motion for summary judgment, D&L finally admitted full knowledge of the Agreement, admitted that its agent had authority to execute the Agreement on D&L's behalf and moved to amend its answer. On February 24, 1994, the District Court allowed D&L to file an amended answer. On that day, D&L filed an amended answer and counterclaim.

¶ On November 19, 1993, CWS moved for sanctions, arguing that D&L had attempted to mislead, delay, and hinder the prosecution of CWS's complaint. On December 5, 1994, the District Court awarded CWS $4,904.25 for attorney fees and $2,500 as sanctions for D&L's initial answer to the complaint and interrogatory answers that denied the Agreement and Cozad's authority to sign the lease for D&L.

¶ The case proceeded to a bench trial on March 18, 1996. On April 25, 1996, the District Court filed its findings of fact, conclusions of law, and order, entering judgment in favor of CWS in the amount of $56,577.54. Thereafter, D&L filed several post-trial motions concerning the interest rate to be used in calculating the delinquency charge included in the judgment award. The parties stipulated to the entry of an amended judgment in the amount of $48,312.54. This amended judgment was filed on August 13, 1997.

¶ On September 2, 1997, D&L filed its notice of appeal from the amended judgment.

ISSUE 1

¶ **Did the District Court err in concluding there was sufficient consideration in the contract between the parties?**

¶ **D&L argues failure of consideration results in an invalid contract. D&L asserts that CWS's consideration amounted to a drill that was operative only five hours after it was placed in operation on the Ashton job. D&L alleges that there was failure of consideration on CWS's part because the drill malfunctioned and overheated. Therefore, D&L argues that CWS's failure of consideration renders the contract unenforceable.**

¶ **The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct.** *Carbon County v. Union Reserve Coal Co.* **(1995), 271 Mont. 459, 469, 898 P.2d 680, 686.**

¶ **A basic principle of contract law, of course, is that there must be consideration in order to have a valid contract. Section 28-2-102(4), MCA;** *Boise Cascade Corp. v. First Security Bank of Anaconda* **(1979), 183 Mont. 378, 391, 600 P.2d 173, 181. The equipment rental agreement of March 1, 1990, creates a presumption of consideration between D&L and CWS.** *See* **§ 28-2-804, MCA. Under § 28-2-805, MCA, D&L bears the burden of proof in seeking to invalidate the agreement for failure of consideration.**

¶ **The District Court concluded that D&L did not meet its burden at trial. We agree. Under the agreement, D&L agreed to lease a rock drill from CWS for three months beginning March 1, 1990, and ending May 31, 1990. Moreover, under Paragraph 7 of the Agreement, D&L is conclusively presumed to have accepted the drill in its condition upon receipt if D&L did not give CWS notice of any defects within ten days of receipt. Paragraph 7 states:**

> Repairs. Lessor shall not be obligated to make any repairs or replacements and Lessee shall not incur for Lessor's account or liability any expense therefor without Lessor's prior written consent. Lessee shall inspect the equipment within ten (10) days after its receipt: unless within said time Lessee notified Lessor, stating the details of any defects. Lessee shall be conclusively presumed to have accepted the equipment in its then condition. Thereafter Lessee shall effect and bear the expense of all necessary repairs, maintenance and replacements, using only genuine parts of the manufacturer of the leased

equipment, and Lessee assumes all risk of injury or loss to the equipment during the term of this lease or any extension thereof, however caused. Lessee agrees to service equipment in accordance with good operating practice and to protect the same from the weather.

¶ **On appeal, D&L does not argue that it gave CWS proper notice of any problems with the drill in the time period provided under Paragraph 7. In fact, in its brief, D&L states "D&L never gave CWS written notice of any defects in the drill within ten days from March 3, 1990, when the drill was delivered." Instead, D&L contends that it verbally notified CWS of problems with the drill. CWS disputes these contentions.**

¶ **Under Paragraph 7 of the Agreement, D&L is presumed to have accepted the drill in its condition upon receipt if D&L did not give CWS notice within ten days of receipt. The District Court found that D&L did not notify CWS about any problem with the drill within ten days of receipt. Therefore, this Court cannot conclude that the contract fails for lack of consideration.**

## ISSUE 2

¶ **Did the District Court err in concluding that the Agreement was not mutually canceled and rescinded by the parties?**

¶ **D&L argues that the parties canceled and rescinded the Agreement because the drill was inoperative due to overheating. D&L's argument for rescission is based on a fax sent by Richey to Cozad dated March 22, 1990. The fax states in relevant part:**

> Bob, Please do not send our ROC 712 back until we advise. We are now in discussions with Atlas Copco. The machine may be diverted to another location. Sorry the machine didn't work out.

¶ **The District Court concluded that this fax could not be interpreted as indicating that the Agreement between the parties was indeed canceled. We review a district court's conclusions of law to determine whether the court's interpretation of the law**

is correct. *Carbon County*, 271 Mont. at 469, 898 P.2d at 686.

¶ Rescission of a contract can be undertaken only under certain circumstances. Section 28-2-1711, MCA, states that "[a] party to a contract may rescind the same in the following cases only: . . . (5) if all the other parties consent." Moreover, mutual cancellation "must be clearly expressed and shown, and acts and conduct of the parties to be sufficient must be clear, convincing and inconsistent with the existence of the contract." *West River Equipment Co. v. Holzworth Construction Co.* (1959), 134 Mont. 582, 587, 335 P.2d 298, 301-02.

¶ We agree with the District Court that the fax and the actions of both D&L and CWS do not amount to a clear expression of the intent necessary to establish rescission. In fact, a seven page fax sent by Abe Moreno (Cozad's replacement in Arizona) indicated that he "will make every effort to get Carl Weissman & Sons their entitled monies." We conclude that the District Court did not err in determining that the March 1, 1990, Agreement was mutually rescinded.

ISSUE 3

¶ Did the District Court err by concluding that CWS did not violate § 70-8-101, MCA (1989)?

¶ D&L argues that the District Court erred by failing to conclude that CWS violated § 70-8-101, MCA (1989), because the drill was delivered in a condition not fit for the purpose for which it was intended. Section 70-8-101, MCA (1989), provided:

> One who lets personal property must deliver it to the hirer, secure his quiet enjoyment thereof against all lawful claimants, put it into a condition fit for the purpose for which he lets it, and repair all deteriorations thereof not occasioned by the fault of the hirer and not the natural result of its use.

¶ CWS counters by arguing that in order for it to have violated the statute, the District Court first had to find that the drill was not in a condition fit for the purpose for which it was intended. CWS contends that the drill left Bozeman in a like-new condition. Moreover, CWS argues that under Paragraph 7 of the Agreement, D&L

was required to inspect the drill and provide written notice of any defects within ten days of delivery.

¶ The District Court concluded that since D&L did not object to the condition of the drill pursuant to the terms of Paragraph 7 of the Agreement, D&L is presumed to have accepted the drill in its condition upon receipt. As noted above, this Court reviews a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *Carbon County*, 271 Mont. at 469, 898 P.2d at 686.

¶ We conclude that the District Court was correct in holding that D&L's § 70-8-101, MCA (1989), claim was without merit. As discussed above, the Agreement between the parties is a valid contract. Under Paragraph 16 of the Agreement, the parties waived all warranties. Therefore, D&L waived any benefits provided by § 70-8-101, MCA (1989). Furthermore, by not objecting to the drill's condition pursuant to Paragraph 7 of the Agreement, D&L is presumed to have accepted the drill in a condition fit for the purpose which D&L intended.

ISSUE 4

¶ Did the District Court err in concluding that CWS had not misrepresented the condition of the drill?

¶ D&L argues that CWS negligently misrepresented the condition of the drill which was a breach of the agreement. D&L alleges that Richey told Cozad that the drill was in like-new condition before delivering it. However, because the drill became inoperative due to overheating soon after delivery, D&L argues that there was a negligent misrepresentation about the condition of the drill which was breach of the agreement.

¶ As discussed above, Paragraph 7 of the Agreement required D&L to give notice of any defects with the drill within ten days of receipt. If D&L did not give CWS notice, D&L is presumed to have accepted the drill in its condition.

¶ The District Court found there was no evidence that D&L gave any notice to CWS about any defects with the drill within ten days of receipt. Furthermore, the court

stated that even if CWS had misrepresented the condition of the drill, pursuant to Paragraph 7 of the Agreement, D&L was required to assess the condition of the drill upon receipt and not rely upon previous representations by CWS. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *Carbon County*, 271 Mont. at 469, 898 P.2d at 686.

¶ We conclude that the District Court did not err in concluding that CWS breached the Agreement by misrepresenting the condition of the drill. Under Paragraph 7 of the Agreement, D&L should have given notice to CWS within ten days if there were any problems with the drill, including if the drill was not in the condition D&L expected during negotiations.

## ISSUE 5

¶ Did the District Court abuse its discretion in excluding certain testimony regarding D&L's failure to make a lease payment to CWS?

¶ We review evidentiary rulings by the district court to determine whether the district court abused its discretion. *State v. Passama* (1993), 261 Mont. 338, 341, 863 P.2d 378, 380. The district court has broad discretion to determine whether evidence is relevant and admissible, and absent a showing of abuse of discretion, the trial court's determination will not be overturned. *Passama*, 261 Mont. at 341, 863 P.2d at 380.

¶ At trial, D&L offered testimony by David Thomas to establish the reason why D&L did not pay CWS. Thomas testified that he did not pay because Bob Cozad told him that the drill did not work. CWS objected to this testimony as hearsay because it believed D&L offered the statement as proof the drill failed to operate properly. The District Court sustained CWS's objections and ordered the testimony to be stricken from the record.

¶ On appeal, D&L argues, as it did at trial, that the testimony was offered to show "the frame of mind of the witness as to why payment wasn't paid." D&L contends that the testimony was not offered as evidence to establish the drill did not work. Instead, D&L asserts the testimony was submitted to show why Thomas did not make any of the lease payments.

¶ CWS responds that Thomas's testimony was hearsay and should have been excluded. However, CWS states that if the District Court erred in striking this testimony, the error was not prejudicial but was harmless.

¶ We agree with D&L that the testimony of Thomas was not hearsay under Rule 801 (c), M.R.Evid., and "offered in evidence to prove the truth of the matter asserted." However, we determine that the error was harmless. In its brief, D&L states that this "error is not critical to overturn the judgment." D&L further states that the excluded evidence was not important because "[e]vidence that the drill did not work was established by Cozad's own testimony."

¶ We have previously held that when a party offers evidence that is improperly excluded by a district court in one circumstance and then offered by the same party and properly admitted by the court in another circumstance, no prejudice would result from the exclusion of the evidence that was ultimately admitted. *See Niemen v. Howell* (1988), 234 Mont. 471, 764 P.2d 854. In this case, D&L was able to submit evidence regarding the problems with the drill through Cozad. Therefore, we conclude that the substantial rights of D&L were not adversely affected by the District Court striking Thomas's testimony from the record.

## ISSUE 6

¶ Did the District Court err in granting sanctions to the plaintiff?

¶ We review a district court's conclusions regarding Rule 11, M.R.Civ.P., sanctions for abuse of discretion. *Wise v. Sebena* (1991), 248 Mont. 32, 38, 808 P.2d 494, 498. Our standard of review of sanctions imposed under Rule 37, M.R.Civ.P., is whether the district court abused its discretion. *First Bank (N.A.)--Billings v. Heidema* (1986), 219 Mont. 373, 375, 711 P.2d 1384, 1386.

¶ D&L asks this Court to vacate the award of $7,404.25 in sanctions and attorney fees to CWS by the District Court if we conclude that there was a failure of consideration and the parties mutually canceled and rescinded the March 1, 1990, lease. As discussed above, the lease is a valid enforceable agreement between CWS and D&L and does not fail for a lack of consideration. Under the circumstances, the award of sanctions was not an abuse of discretion.

¶ **Affirmed.**

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART