No. 98-319

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 275N

MURLAND W. SEARIGHT and

VIRGINIA M. SEARIGHT,

Plaintiffs and Appellants,

v.

DARRELL S. WORM,

Defendant and Respondent.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Murland Searight, Attorney at Law, Columbia Falls, Montana

For Respondent:

(No appearance made)

Submitted on Briefs: April 29, 1999

Decided: November 16, 1999

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶ **Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

¶ **Murland and Virginia Searight (the Searights) appeal the judgment and order of the Eleventh Judicial District Court, Flathead County. We affirm.**

No

¶ **The following issues are presented on appeal:**

¶ **1. Whether the Searights were denied a fair trial when the District Court declined to recuse itself.**

¶ **2. Whether the District Court erred in granting summary judgment in favor of Darrell Worm.**

¶ **3. Whether the District Court abused its discretion in declining to impose Rule 11 sanctions on Darrell Worm.**

Standard of Review

¶ **We review a district court's conclusions of law to determine whether they are correct. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.**

Factual and Procedural Background

¶ **In 1986, Attorney Darrell Worm (Worm) represented Bonnie Howell (Howell) in a labor dispute with the Searights. The Department of Labor and Industry awarded Howell $1,110.14 in wages and the same amount as a penalty. In October, 1989 Worm filed a motion for attorney fees and costs. In November, 1989 Worm and the Searights filed a stipulation for attorney fees that the District Court included in its subsequent order. The parties agreed that Howell was entitled to attorney fees and costs as part of the judgment in her favor and that the attorney fees were $1,526.25.**

¶ **Judgment was filed in November, 1989. However, in August, 1990 the Searights moved to vacate the judgment and sought to stay enforcement of a writ of execution. Worm responded. In October, 1990 the Searights appealed the November, 1989 judgment and Worm filed a motion for $1,916.20 in attorney fees and costs that were incurred after the November, 1989 judgment. A hearing was not held on that motion because of the Searights' appeal. In April, 1991 this Court affirmed the November, 1989 judgment of the District Court. Searight v. Howell (1991), 248 Mont. 122, 809**

**P.2d 588.**

¶ **In May, 1991 Worm filed a motion and affidavit seeking $1,524.69 in attorney fees incurred after his October, 1990 motion for attorney fees. In total, Worm sought $3,440.89 for attorney fees that were incurred after the November, 1989 judgment. In May, 1991 the Searights sent Worm a check in the amount of $3,440.89 for attorney fees and costs. The Searights requested that Worm cancel a hearing on attorney fees that was set for June 14, 1991. Worm vacated the hearing but did not inform the Searights of his action. The Searights stopped their check and sent Worm a check for $2,666.77, explaining that the original check for $3,440.89 incorrectly included monies for an October, 1990 hearing that was not held. The Searights added that they enclosed the check "in satisfaction of judgment of this case."**

¶ **In a letter dated June 4, 1991 Worm responded:**

> I have received the payment you forwarded in the amount of $2,666.77. I have, however, accepted it in partial not full satisfaction of the obligation for attorney fees and costs in this matter.
>
> Enclosed is an Amended Motion and Affidavit which should explain why the payment is, in my view, partial and not complete. Unless we can reach an amiable resolution of this issue I will proceed to schedule a hearing before the Judge. After you have had a chance to review the enclosed, please contact me.

¶ **In his enclosed amended motion and affidavit, Worm stated that he was submitting the affidavit in amendment of affidavits that he had submitted in 1990 and 1991 and that he accepted the check for $2,666.77 "in partial payment of accrued attorney fees and costs herein." Worm asserted that a dispute remained regarding whether Howell was also entitled to both interest on the attorney fees and costs that the District Court awarded her pursuant to the November, 1989 judgment and to attorney fees for three hours spent preparing her appellate brief. Worm concluded that with these additional items, the total for attorney fees and costs was $3,016.39. Thereafter, the Searights appeared for the vacated June, 1991 hearing and advised the District Court in an "Affidavit of Appearance" that no hearing was held.**

¶ In July, 1991 the Searights wrote Worm, advising him that "more than forty-five days have passed without action due to your failure to hold the required evidentiary hearings. Your motions for costs and attorney fees are deemed denied." The Searights demanded that Worm return their check for $2,666.77. Worm responded in a letter that he was willing to "consider the $2,666.77 payment as satisfaction in full of the [Searights'] attorney fee and cost obligation . . . ." Worm also filed a notice that he was withdrawing the claim for attorney fees that he filed in June, 1991 and his earlier claim for attorney fees in the amount of $1,524.69 because Howell had received $2,666.77 in satisfaction of her claim for attorney fees and costs.

¶ In August, 1991 the Searights filed a complaint in District Court, alleging that "Defendant [Worm], by fraud and malice wrongfully withheld and converted to his own use Plaintiffs' money in the amount of $2,666.77." In March, 1993 the Searights moved the District Court for sanctions on Worm. In May, 1994 the Searights moved for summary judgment. In August, 1994 Worm filed a cross-motion for summary judgment; the Searights later withdrew their motion for summary judgment. The Searights petitioned this Court for a writ of supervisory control. In September, 1997 this Court denied the Searights' petition and remanded the matter to District Court for "the timely rendition of decisions on pending motions." In September, 1997 the Searights moved for the disqualification of the Honorable Ted O. Lympus. This Court appointed the Honorable C. B. McNeil to hear the Searights' motion. Judge McNeil denied the Searights' motion for disqualification and set aside as void the Searights' affidavit, concluding in part that it was "fatally defective because it fails to allege <u>any</u> facts showing personal bias or prejudice of the presiding judge." In November, 1997 the District Court granted Worm's cross-motion for summary judgment. In February, 1998 the Searights moved the District Court to set aside orders and order a new trial. The Searights also moved the District Court to recuse Judge Lympus. In April, 1998 the District Court denied the Searights' motions to recuse, to set aside orders, and to order a new trial and entered judgment in favor of Worm. From that judgment the Searights appeal. Worm has not filed a response.

## Discussion

¶ 1. Whether the Searights were denied a fair trial when the District Court declined to recuse itself.

¶ The Searights argue that their right to a fair trial was violated when the District

Court declined to recuse itself after showing bias and personal hostility toward them. The Searights contend that the District Court's response to their petition for writ of supervisory control disclosed inappropriate *ex parte* communications between the District Court and Worm. The Searights also argue that in its response to their petition for writ of supervisory control, the District Court engaged in "an *ad hominem* personal diatribe." The Searights argue further that the District Court's orders are permeated with misstatements of law and fact that are "explainable only by the court's determination to achieve the desired result in accordance with Judge Lympus' personal bias and demonstrated personal hostility towards Mr. Searight."

¶ In its response to the Searights' petition for writ of supervisory control, the District Court commented that after it had deemed the matters in the present case to be fully submitted, "its law clerk contacted Defendant [Worm] by telephone and requested that he submit a proposed order on all the outstanding motions . . . . [Worm's] office sent to the Court a computer disc with all of Defendant's briefs filed in response to [the Searights'] various motions. The purpose of the disc was to enable the law clerk to prepare a proposed order on those motions." The District Court concluded:

> The Court is ready to rule and has been for some time. . . . Moreover and finally, the Court has also for some time viewed this matter as nothing more than an absolutely meritless but nevertheless vexatious harassment inflicted upon Darrell Worm by Murland Searight, a retired naval officer living up the North Fork with a law degree and a lot of time on his hands.

¶ The Searights' contention that the District Court had an improper *ex parte* communication with Worm is without merit. Worm merely provided the District Court with a computer disc that contained his responses to the Searights' various motions. The Searights have not shown that they have been prejudiced by that "*ex parte*" communication between the District Court and Worm nor that the communication concerned the merits of the present case. *Compare* State v. Hage (1993), 258 Mont. 498, 503, 853 P.2d 1251, 1254, *overruled on other grounds by* State v. Hansen, 1999 MT 253, ___ P.2d ___, 56 St.Rep. 997 (concluding appellant had not shown prejudice as a result of *ex parte* contact); Shields v. Thunem (1986), 220 Mont. 449, 451, 716 P.2d 217, 218-19 (concluding judge should have disqualified himself after *ex parte* meetings with parties in which "discussions relative to the merits of the

case" were held); Eleventh Judicial District Court Rule 6(C) (providing in part that "[t]here shall be no ex parte discussion with the Court of *substantive* issues") (emphasis added).

¶ The District Court's remarks characterizing Mr. Searight and the Searights' case have two distinct elements that we consider separately. First, the District Court described the Searights' case as a meritless and vexatious harassment. We conclude that this description was not an *ad hominem* attack but rather a singularly blunt assessment of the Searights' case. Further, we note that the Searights do not dispute the District Court's statement that at the time it offered that assessment of the Searights' case, it had decided the issues but had yet to prepare an order.

¶ Second, the District Court described Murland as a retired naval officer with a law degree and a lot of time on his hands. Although the Searights do not dispute the accuracy of this observation, we do not encourage such judicial observations. However, we conclude that the District Court's statement did not create an impression of impropriety that implicated the Searights' right to a fair trial.

¶ Viewing as a whole the District Court's remarks about Mr. Searight and the merits of the Searights' case, we conclude that they fall short of the circumstances that we have previously determined warrant the disqualification of a judge to avoid the appearance of impropriety. *Compare* In re Marriage of Miller (1989), 239 Mont. 12, 19, 778 P.2d 888, 892 (concluding on remand case should be assigned to different judge to avoid impression of impropriety when newspaper article was published about original judge who responded with published letter to newspaper) *and* Washington v. Montana Min. Properties (1990), 243 Mont. 509, 515-16, 795 P.2d 460, 464 (concluding judge should be disqualified because his son interning for respondent's law firm, newspaper article reporting that judge socialized with members of respondent's law firm at football game, and judge's ruling allowing counsel for respondent to testify "have snowballed to create an appearance of impropriety"). We hold that the District Court's denial of the Searights' motion to recuse did not violate their right to a fair trial.

¶ 2. Whether the District Court erred in granting summary judgment in favor of Darrell Worm.

¶ Our standard of review in appeals from summary judgment rulings is *de novo*. *See*

**Meyer v. Creative Nail Design, Inc., 1999 MT 74, ¶ 13, 294 Mont. 46, ¶ 13, 975 P.2d 1264, ¶ 13. In Bruner v. Yellowstone County (1995), 272 Mont. 261, 900 P.2d 901, we concluded that to prove that summary judgment is appropriate:**

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of material fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law.

*Bruner*, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted). To be granted summary judgment, the "moving party has the burden of showing a complete absence of any genuine issue as to all facts considered material in light of the substantive principles that entitle the moving party to judgment as a matter of law and all reasonable inferences are to be drawn in favor of the party opposing summary judgment." Kolar v. Bergo (1996), 280 Mont. 262, 266, 929 P.2d 867, 869. Conclusory statements alone do not create genuine issues of material fact. *See* Sprunk v. First Bank System (1992), 252 Mont. 463, 466-67, 830 P.2d 103, 105 (hereafter, *Sprunk II*). Thus, "[t]he party opposing summary judgment must 'set forth specific facts and cannot rely on speculative, fanciful, or conclusory statements.' " *Sprunk II*, 252 Mont. at 466, 830 P.2d at 105 (citation omitted). Further, "[i]mportant in the determination [of the existence of genuine issues of material fact] is whether the material facts are actually disputed by the parties or whether the parties simply interpret the facts differently." *Sprunk II*, 252 Mont. at 466, 830 P.2d at 105.

**¶ As previously discussed, the Searights brought suit claiming that Worm had unlawfully retained the payment of $2,666.77 and converted it to his personal use. Section 27-1-713, MCA, provides**

> **Duty to restore thing wrongfully acquired or retained**. One who obtains a thing without the consent of its owner, by a consent afterwards rescinded, or by an unlawful exaction which the owner could not at the time prudently refuse must restore it to the person from whom it was thus obtained unless he has acquired a title thereto superior to that of such other person . . . .

¶ The Searights contend that in the absence of a district court order determining their liability, they were under no obligation to pay Worm. They argue that Worm made a counter offer to their offer and that they properly rejected his counteroffer; they also argue that Worm made a qualified acceptance of their offer that is invalid under Montana law. Finally, the Searights contend that the District Court's findings of "essential" undisputed facts are contradicted by the record.

¶ As a preliminary matter, we note the Searights' argument that the District Court erroneously assigned the burden in moving for summary judgment to them. The record reveals that the Searights moved for summary judgment, that Worm made a cross-motion for summary judgment, and that the Searights withdrew their motion for summary judgment. We conclude that the District Court erred in assigning the burden in moving for summary judgment to the Searights. Upon *de novo* review, we determine whether Worm met his burden to show that there were no genuine issues of material fact.

¶ In its order on summary judgment, the District Court determined that because the Searights' payment to Worm was voluntary and unconditional, the Searights had to show "that they retained the right . . . to rescind their original consent thus entitling them to the return of the money." The District Court also determined that although Worm acknowledged the Searights' payment in the amended motion that he filed in June, 1991, he also claimed additional attorney fees that "were inadvertently omitted from the original motions." Further, the District Court determined that even if the Searights had retained the right to rescind their payment, their conduct after making the payment showed an implied if not an express waiver of their right to rescind.

¶ The Searights argue that the District Court erred in concluding that they had moved to exclude evidence of their $2,666.77 payment to Worm pursuant to Rule 408, M.R.Evid., and §§ 26-1-701, et seq., MCA. The District Court reached this conclusion in its November, 1997 Order on motions and rationale. We note that the Searights have failed to show the relevance of this conclusion to the District Court's order granting summary judgment in favor of Worm. Moreover, the record shows that the Searights did object to admission of their payment of $2,666.77 as evidence of liability or amount. Further, in its November, 1997 Order on motions and rationale, the District Court concluded that the Searights' liability was not at issue, commenting "[a]t this point, the Court can only determine whether, having once made a payment to Defendant, Plaintiffs are entitled to force Defendant to refund

it." The Searights do not dispute that conclusion on appeal, and we conclude that their argument is mistaken and without merit.

¶ The Searights also argue that the District Court erred in finding that their original payment of $2,666.77 was unconditional. They place much reliance on Worm's written response that he accepted the check in "partial satisfaction" of the monies owed and they assert that their offer of payment was expressly conditioned upon satisfaction of the case. They argue further that Worm gave them a mere qualified acceptance, in violation of § 28-2-504, MCA, which requires that "acceptance must be absolute and unqualified."

¶ Section 28-2-504, MCA, provides:

> **Acceptance to be absolute**. An acceptance must be absolute and unqualified or must include in itself an acceptance of that character which the proposer can separate from the rest and which will bind the person accepting. A qualified acceptance is a new proposal.

¶ In *Sawyer-Adecor Intern., Inc. v. Anglin* (1982), 198 Mont. 440, 646 P.2d 1194, the parties agreed to a purchase of mining claims. They executed a letter of intent providing in part that the offeree (Joyce) pay the offeror (Sawyer) $1,500 when the letter of intent was signed. Joyce paid Sawyer $1,500 and thereafter executed an agreement for purchase and sale. The agreement for purchase and sale met all the conditions set forth in the parties' letter of intent. However, the agreement for purchase and sale executed by Joyce included the additional provision that should title to the mining claims be deemed defective, Joyce would have an option to acquire only those mining claims that had good title with a pro rata reduction of the purchase price. The Court in *Sawyer-Adecor Intern., Inc.*, determined that "Joyce's written acceptance, by the executed written agreement of April 9, 1976, was an acceptance which included 'in itself an acceptance of that character which the proposer [Sawyer] can separate from the rest and which will bind the person accepting.' " *Sawyer-Adecor Intern., Inc.*, 198 Mont. at 451, 646 P.2d at 1200 (citation omitted).

¶ In the present case, we hold that Worm's acceptance of the Searights' payment of

$2,666.77 was an acceptance "of that character which the proposer can separate from the rest and which will bind the person accepting." Section 28-2-504, MCA. The Searights offered the payment of $2,666.77 "in satisfaction of judgment of this case." The Searights do not dispute that they intended their payment to cover the attorney fees that Worm had mentioned in his previous filings with the District Court. Nor do they dispute that Worm accepted the money for that purpose. Although Worm inartfully characterized his acceptance as a "partial satisfaction" because of the additional fees that he believed he had incurred, the record is clear that he accepted the Searights' check for $2,666.77 for the attorney fees that he addressed previously in filings with the District Court. With regard only to those attorney fees, the Searights' offer and Worm's acceptance were unconditional. Worm did not accept the Searights' offer on condition that they also pay him additional monies. Rather, he accepted their offer but also expressed his belief that they owed additional monies that he would pursue if they could not reach an "amiable" resolution.

¶ Moreover, the record clearly establishes that the Searights did not revoke their offer before Worm accepted their check. Thus, the Searights did not have a right to revoke their offer after Worm accepted their check. *Compare Sawyer-Adecor Intern., Inc.*, 198 Mont. at 451, 646 P.2d at 1200 (concluding that "to revoke the offer . . . Sawyer must have communicated that revocation to Joyce before he accepted that continuing offer"); § 28-2-512, MCA (providing that communication of notice of revocation by a proposing party must occur before the other party's acceptance has been communicated to the proposing party). We hold that there are no genuine issues of material fact and that Worm is entitled to summary judgment as a matter of law. Because this holding is dispositive, we do not address the other issues raised here by the Searights.

¶ 3. Whether the District Court abused its discretion in declining to impose sanctions on Worm.

¶ The Searights argue in essence that Worm has lied repeatedly in his briefs and that he should be sanctioned. The Searights adduce nine "counts" that they believe substantiate their contention that Worm has made false assertions "designed to muddy the legal and factual waters in general and divert attention from the actual issues. . . . [Worm's] actions have caused unnecessary delay and needless increase in the expense of litigation." The District Court concluded that "[i]n each respect Plaintiffs' objections are over differences of opinion or characterizations of

undisputed facts which fall within the realm of legitimate advocacy. Plaintiffs seem to believe that disagreeing with them should subject Defendant to sanctions. They are mistaken."

¶ Rule 11, M.R.Civ.P., provides in pertinent part:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

We review a district court's conclusions concerning Rule 11, M.R.Civ.P., sanctions for abuse of discretion. Carl Weissman & Sons, Inc. v. D & L Thomas Corp., 1998 MT 213, ¶ 53, 290 Mont. 433, ¶ 53, 963 P.2d 1263, ¶ 53.

¶ Having reviewed the record, we agree with the District Court that the instances of alleged attorney misconduct complained of by the Searights reflect legitimate disagreement, not efforts to "harass or to cause unnecessary delay or needless increase in the cost of litigation." Rule 11, M.R.Civ.P. We hold that the District Court did not abuse its discretion in denying the Searights' motion for Rule 11 sanctions. Finally, in light of the gratuitously protracted and contentious record, we note the District Court appropriately cautioned the Searights that they have "misapplied and misstated the law, have failed to articulate a coherent theory in pursuing their litigation, and have imposed an unreasonable burden upon Defendant and the Court by the sheer volume of such filings."

¶ Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

No

/S/ KARLA M. GRAY